2016 PA Super 306

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHRISTOPHER ROSS HECKER, | |
| Appellant | No. 1950 MDA 2015 |

Appeal from the Judgment of Sentence October 13, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000100-2015

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED DECEMBER 28, 2016**

Christopher Ross Hecker ("Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Centre County after a jury convicted him of Aggravated Harassment by Prisoner, 18 Pa.C.S.A. § 2703.1, for spitting a mouthful of water on a corrections officer.  Sentenced to one to two years' incarceration, Appellant contends there was insufficient evidence that the fluid he spat brought the corrections officer in contact with saliva as required under the statute, and he challenges evidentiary rulings of the court.  We affirm.

On December 8, 2014, Appellant was an inmate housed in a suicide watch cell at the Centre County Correctional Facility.  Corrections Officer Ryan Miller attempted to serve Appellant his meal by placing it on the "food

_____

*Former Justice specially assigned to the Superior Court.

pass" shelf extending out from an opening in the cell door, but Appellant picked the food up and threw it back at Miller. N.T. at 8/31/15 at 23, 37. Given Appellant's response, Miller attempted to close the food pass door, but Appellant placed his arm in the way, so Miller opened the door enough to allow Appellant to withdraw his arm before Miller closed the door again and locked it. *Id*.

Appellant began to fill his mouth with water and spit it through a one-half inch opening running along the entire height of the cell door between the door and the jamb. N.T. at 24. The opening was large enough to see through to the other side of the door. *Id*. On various prior occasions, Appellant had spat and urinated through this opening in efforts to harass correction officers. N.T. 24-29. On this occasion, as verified by security cameras, Appellant repeatedly took water from his sink, spat water through the opening for the next twelve minutes, even as Officer Miller attempted to block it with a bed sheet. N.T. at 30.

According to Miller, the first time he approached with the sheet, Appellant spat on his right knee, saturating his pants all the way down to his boot. N.T. at 31. Miller held the sheet over the opening after that until a fellow officer successfully turned off the water supply to the sink in Appellant's cell.

Pennsylvania State Trooper Elizabeth Rita Clatch testified that she was called to the prison and interviewed CO Miller about the episode. N.T. at 56. She collected both the pair of pants and the sheet that Appellant spat upon

and took them to the evidence room of her barracks, where she hung them to dry overnight. Id. No testing was performed on the items, however, because the District Attorney's Office did not request testing. N.T. at 57. On cross-examination, Trooper Clatch verified a State Police laboratory in Harrisburg can test for the presence of saliva. N.T. at 67-68.

In summations, counsel for Appellant emphasized that the Commonwealth elected not to perform laboratory testing on CO Miller's pants because it believed the test would fail to detect saliva:

> **DEFENSE COUNSEL:** The most important evidence you could have in this case [is] that there was indeed saliva in that tap water that was continually being spat for 12 minutes before the CO was hit[; there] has to be the saliva in it. The Judge will give you that instruction.
>
> That's what aggravated harassment is, not spitting on somebody. It's spitting saliva on [somebody]. . . . If it's not that, it's not aggravated harassment. It might be something else, but that's the crime they chose to bring.
>
> They have the burden of proof, because they get to choose what charges to bring against a person that is being tried by a jury. And they chose aggravated harassment. They say it's not the crime of the century, it's two attorneys, the trooper, all present in court to bring you this case, and they made a conscious decision not to test the evidence. What does that tell you? Tells you they didn't think there was saliva in that sample. That's why they didn't test it.

N.T. at 76-77.

After closing arguments, the court charged the jury that to find Appellant guilty under Section 2703.1, it was required find each of three elements proven beyond a reasonable doubt: (1) Appellant was a prisoner

at the time of the assault; (2) he caused CO Miller to come into contact with saliva by spitting the fluid on him; and (3) it was his conscious goal or purpose to cause CO Miller to come in contact with the fluid containing saliva, or that he was aware that it was almost certain he would cause such contact. N.T. at 96-97. The jury retired to deliberations and returned with a verdict of guilt. On October 13, 2015, the court sentenced Appellant to one to two years' incarceration, after which Appellant filed this timely appeal.

Appellant presents the following questions for our review:

1. WAS THE EVIDENCE INSUFFICIENT TO ESTABLISH THAT A CORRECTIONS OFFICER CAME INTO CONTACT WITH A BODILY FLUID, THAT IT WAS DEFENDANT'S CONSCIOUS GOAL OR PURPOSE THAT HE DO SO, OR THAT DEFENDANT WAS AWARE THAT IT WAS ALMOST CERTAIN THAT HE WOULD COME INTO CONTACT WITH BODILY FLUID AS THE COMMONWEALTH ONLY ESTABLISHED THAT DEFENDANT WAS SQUIRTING TAP WATER OUT OF HIS MOUTH FOR 12 MINUTES BEFORE ANY OF IT CAME IN CONTACT WITH THE OFFICER'S PANT LEG[?]

2. DID THE LOWER COURT ERR IN GRANTING THE COMMONWEALTH'S REQUEST TO BAR [DEFENDANT'S] REQUEST THAT SCIENTIFIC PROOF WAS REQUIRED TO ESTABLISH THAT THE TAP WATER DEFENDANT WAS SPITTING OUT OF HIS MOUTH CONTAINED SALIVA AS THESE RULINGS: IMPROPERLY RELIEVED THE COMMONWEALTH OF ITS BURDEN OF PROVING AN ELEMENT OF THE OFFENSE OF AGGRAVATED HARASSMENT BY PRISONER, WAS AN INCORRECT STATEMENT OF LAW, AND DEPRIVED DEFENDANT OF HIS DUE PROCESS RIGHT TO PRESENT A DEFENSE?

3. DID THE LOWER COURT ERR IN PRECLUDING THE DEFENDANT FROM INTRODUCING EVIDENCE OF OTHER CASES WHERE THE COMMONWEALTH TESTED CLOTHING TAKEN INTO EVIDENCE FOR THE PRESENCE OF SALIVA AS THE ABSENCE OF THAT EVIDENCE PERMITTED THE

COMMONWEALTH TO MAKE THE PREJUDICIAL UNREBUTTABLE CLAIM IN ITS CLOSING ARGUMENT THAT IT DID NOT TEST THE CLOTHING BECAUSE IT WOULD HAVE BEEN A WASTE OF MONEY.

Appellant's brief at 5-6.

We first address Appellant's claim that the evidence presented at trial was insufficient to convict him of aggravated harassment by prisoner.

[O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Stays***, 40 A.3d 160, 167 (Pa.Super. 2012) (internal quotations and citations omitted).

The crime of aggravated harassment by prisoner is defined as follows:

A person who is confined in or committed to any local or county detention facility, jail or prison or any State penal or correctional

- 5 -

institution or other State penal or correctional facility located in this Commonwealth commits a felony of the third degree if he, while so confined or committed ... intentionally or knowingly causes or attempts to cause another to come into contact with blood, seminal fluid, saliva, urine or feces by throwing, tossing, spitting or expelling such fluid or material.

18 Pa.C.S. § 2703.1.

In **Commonwealth v. Boyd**, 763 A.2d 421 (Pa.Super. 2000), this Court announced that "it is unnecessary for the Commonwealth to conduct a chemical analysis of the fluid or material to determine whether it is one of the fluids/materials listed in Section 2703.1." **Id**. at 424. Instead, the Commonwealth may meet its burden of proof by relying upon circumstantial evidence that the substance was one of the offensive substances listed in the statute. **Id**. Applying this standard to the case before it, the **Boyd** court held that circumstantial evidence as to the identity of a cup of liquid thrown on a prison guard was sufficient to obviate the need for chemical analysis. Specifically, the prisoner threatened to throw urine on the guard earlier that day, stated it would be feces the next time as he threw the liquid, and the guard testified the liquid was warm, yellow, and smelled like urine. **Id**. at 422.

Here, Appellant argues that evidence establishing he spat water upon CO Miller could not, alone, "support a reasonable conclusion that this water was or even contained any amount of saliva[,]" where he had been spitting water continuously for approximately twelve minutes beforehand. "Mr. Hecker was convicted solely on the unreasonable [and] unsupported inference that because this tap water had been taken into his mouth briefly

prior to expulsion that it contained saliva[,]" Appellant argues in his brief. Appellant's brief at 17.

A plain reading of the statute confirms that in order to be convicted of aggravated harassment by prisoner, Appellant must have brought or attempted to bring CO Miller in contact with his saliva. Testimonial and video evidence that Appellant spat a mouthful of water on the corrections officer supplied sufficient circumstantial evidence from which to infer that a mixture of water and saliva landed on the officer.[1] Indeed, it is difficult to imagine how saliva would not constitute some part of the mix any time fluid is expelled from the mouth. Moreover, there was no need to analyze the fluid on the officer's pant leg and boot for traces of saliva enzymes or to describe the viscosity or appearance of the fluid, because of the undisputed fact that Appellant discharged this fluid directly from his mouth.

Because the plain language of Section 2703.1 criminalizes an inmate's act of spitting or attempting to spit saliva on a corrections officer, and Appellant's offensive conduct falls squarely under this prohibition, we deem the evidence sufficient to support Appellant's conviction. Accordingly, we reject Appellant's first issue as devoid of merit.

Appellant next charges reversible error with the court's ruling prohibiting him from arguing to the jury that the Commonwealth was required to perform laboratory tests in order to prove the presence of saliva

---

[1] At a minimum, the evidence sufficed to establish Appellant's attempt to land saliva, albeit as part of a larger, water-based mixture, on the officer.

on CO Miller's pants. "Under these circumstances it was improper for the trial court to take away Mr. Hecker's defense that the Commonwealth had to test the evidence it collected for the presence of these enzymes because it is only the presence of these enzymes which distinguish saliva from the tap water he was expelling from his mouth[,]" Appellant argues. Appellant's brief at 21.

We discern no authority supporting this position where evidence allowed the finder of fact to infer beyond a reasonable doubt that Appellant, in spitting upon CO Miller as he did, caused some amount of his saliva to come into contact with the officer. Our decisional law consisting of *Boyd* and its progeny rejects the position that chemical testing is required to support a charge brought pursuant to Section 2703.1 where circumstantial evidence is sufficient to establish the offense. We, therefore, find no merit to this claim.

In his third and final issue, Appellant argues that the trial court erred in excluding evidence that the Commonwealth had opted, in other Section 2703.1 cases, to chemically test clothing for saliva. Appellant was permitted to argue only that testing was not performed in this case and to explore the Commonwealth's reasons for opting against such testing.

Appellant contends the excluded evidence was relevant to show that the Commonwealth normally tested clothing in cases such as this but believed, in this instance, that CO Miller's clothes would have tested negative. Under Pa.R.E. 401, evidence is relevant if "(a) it has any tendency

to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id*.

Instantly, Appellant fails to explain how evidence of chemical testing in other cases would have had any tendency to make a negative test result in the present case more probable. Given the record before us, it seems that fear of the results was, at best, no more likely the reason for opting against testing than was a confidence that eyewitness and video-based evidence of Appellant spitting directly upon CO Miller obviated the need for testing. As such, Appellant fails to satisfy the first condition of relevance under Pa.R.E. 401.

Furthermore, Appellant fails to establish that such evidence was of consequence in determining the action where, again, the circumstantial evidence was sufficient to convict him of 2703.1 without resort to laboratory testing. In this vein, it also bears noting that counsel for Appellant was permitted to advance a zealous argument to the jury that the Commonwealth failed to conduct laboratory testing in this case because it believed the results would be negative. The jury clearly rejected this defense position. Accordingly, this claim affords Appellant no basis for relief.

For the foregoing reasons, judgment of sentence is AFFIRMED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/28/2016