J-S09003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BILLY WAYNE HOUSER | : | |
| | : | |
| Appellant | : | No. 1565 WDA 2017 |

Appeal from the Judgment of Sentence October 2, 2017
In the Court of Common Pleas of Erie County
Criminal Division at No(s):  CP-25-CR-0001081-2017

BEFORE:   PANELLA, P.J., LAZARUS, J., and STRASSBURGER[*], J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED JULY 18, 2019**

Billy Wayne Houser appeals from the judgment of sentence entered in the Erie County Court of Common Pleas following his conviction of robbery of a motor vehicle, robbery, theft by unlawful taking, receiving stolen property, terroristic threats, unlawful restraint, two counts of recklessly endangering another person, and simple assault.[1] Appellant challenges the sufficiency of the evidence underlying his convictions. We affirm.

Testimony presented by the Commonwealth at trial established the following. On the night of February 1, 2017, Appellant, his wife Lisa Houser, and Lisa's sister, Carol Nichols, were together at the house shared by

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3702(a), 3701(a)(1)(v), 3921(a), 3925(a), 2706(a)(1), 2902(a)(1), 2705, and 2701(a)(1), respectively.

Appellant and Lisa. *See* N.T., Jury Trial, 8/16/17 AM at 9 ("N.T., AM"); N.T., Jury Trial, 8/16/17 PM at 10-11 ("N.T., PM"). Carol and Lisa got into an argument over finances. *See* N.T., AM at 12; N.T., PM at 11-12, 47. Without warning, Appellant broke up the fight by throwing Carol to the ground and threatening to "cut her heart out" with a knife. N.T., AM at 13-14; N.T., PM at 12-14. He then told Lisa to move Carol's car from their driveway while he tied Carol to a chair. *See* N.T., AM at 15-18; N.T., PM at 14. When Lisa returned, he tied her to a chair as well. *See* N.T., AM at 18-21; N.T., PM at 19.

With both sisters tied up, Appellant started pacing, rambling about escaping to Canada. *See* N.T., PM at 19. Carol attempted to negotiate with Appellant. *See* N.T., AM at 22; N.T., PM at 20. She offered to drive him to the bank, take out money for him, and then let him have both the car and the money. *See* N.T., AM at 22; N.T., PM at 20. Carol testified that she did this because she "thought he was going to kill us." N.T., PM at 20. Appellant agreed and untied Carol, leaving Lisa restrained at the house. *See* N.T., AM at 22; N.T., PM at 22. Appellant zip-tied Carol's arm to his until they arrived at Carol's car, when Appellant cut Carol's tie using a knife he was carrying. *See* N.T., PM at 23.

The two drove to a bank, where Carol made two withdrawals, both of which she gave to Appellant. *See id.*, at 24-27, 66. They proceeded to a second bank so that she could make a third withdrawal that she also gave to Appellant. *See id.*, at 28. When they left the bank, Appellant instructed Carol

to "just drive." ***Id***., at 28-29. After about twenty minutes of driving, they found themselves on the highway. ***See id***., at 29, 72. Appellant instructed Carol to get out of the car and drove off, leaving her on the side of the highway. ***See id***.

Carol walked to a nearby bar and called the police. ***See id***., at 30. When police arrived, they found that Carol still had a zip-tie fastened to her wrist. ***See id***., at 107. Carol accompanied officers back to the residence where they found Lisa, still tied up. ***See id***., at 108-11. Appellant was apprehended in Ohio the following day with Carol's car. ***See id***., at 115.

Ultimately, a jury convicted Appellant of robbery of a motor vehicle, robbery, theft by unlawful taking, receiving stolen property, terroristic threats, unlawful restraint, two counts of recklessly endangering another person, and simple assault. The trial court sentenced Appellant to nine to eighteen years' imprisonment. This timely appeal follows.

On appeal, Appellant challenges the sufficiency of the evidence underlying his convictions.

The scope of review for sufficiency claims is well-settled.

> Our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive

that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Hecker*, 153 A.3d 1005, 1008 (Pa. Super. 2016) (citation omitted). Further, the Commonwealth may sustain its burden through circumstantial evidence. *See id*.

Moving to Appellant's first claim, he challenges the evidence underlying his robbery of a motor vehicle, robbery, theft by unlawful taking, and receiving stolen property convictions. *See* Appellant's Brief, at 9-11. He contends that the evidence cannot support these convictions, as he believes it shows that Carol voluntarily gave him the money and the car.

Any unlawful taking of a motor vehicle from another person in the presence of that person is a robbery of a motor vehicle. *See* 18 Pa.C.S.A. § 3702(a). This court has interpreted the statute to require "the use of force, intimidation, or the inducement of fear in the victim" in the course of the taking. *Commonwealth v. George*, 705 A.2d 916, 920 (Pa. Super. 1998).

Robbery is defined as a theft committed with force, however slight. *See* Pa.C.S.A. § 3701(a)(1)(v). The force necessary for a robbery may be physical, as some sort of touching, or psychological, as a threat. *See Commonwealth v. Windell*, 529 A.2d 1115, 1116 (Pa. Super. 1987).

Theft by unlawful taking is defined as any unlawful control over movable property with the intent to deprive the rightful owner of that property. *See* 18 Pa.C.S.A. § 3921(a).

Finally, retaining the movable property of another, knowing that it has been stolen, is receiving stolen property. *See* Pa.C.S.A. § 3925(a).

Appellant argues that, because he had Carol's consent to take the car and money, the underlying unlawful taking, a necessary element to these four crimes, was in fact lawful. *See* Appellant's Brief, at 9-11. Because he challenges the same element of these four crimes, we will address these challenges together.

As a general rule, a victim's consent is a defense to a crime if the consent negates an element of the crime. *See* 18 Pa.C.S.A. § 311(a). However, any consent induced by force or duress is ineffective for these purposes. *See* 18 Pa.C.S.A. § 311(c)(4).

Here, by her own testimony, Carol offered Appellant her car while tied up with her sister, as Appellant paced, holding a knife and threatening to kill them. *See* N.T., PM at 19-22. She did so because she thought he might kill them. *See id.*, at 20. While Carol did offer Appellant her car and money unprompted, the inherent duress of the situation negates her consent. Therefore, when Appellant took control of the car and money, it was unlawful. Because he had threatened Carol over the course of the evening, and retained a knife in the car while she withdrew the money from the ATM, he exhibited the requisite force necessary for a robbery. Additionally, this force is sufficient to satisfy the intimidation required for robbery of a motor vehicle. Finally, because the jury heard testimony that Appellant received the money and

retained the car until he was arrested in Ohio the following day, the evidence is sufficient to support a conviction of receiving stolen property. Appellant's arguments based upon Carol's alleged consent merit no relief.

Next, Appellant claims that the evidence did not establish he was present for the robbery of the money. In light of the reasoning above, the evidence was sufficient for the jury to establish that he was present, given that Carol testified he was in the car while they were at the bank. *See* N.T., PM at 24-28. Appellant's argument on appeal based upon the alleged lack of evidence of his presence at the crime scene merits no relief.

Lastly, Appellant contends the Commonwealth failed to present sufficient evidence that he made threats of violence towards or intended to terrorize Lisa. *See* Appellant's Brief, at 11. However, Appellant was never convicted of terroristic threats towards Lisa. *See* N.T., Jury Trial, 8/17/17, at 15. He was only convicted of terroristic threats towards Carol. *See id*. This alone defeats his argument on appeal.

Additionally, even if Appellant had claimed the Commonwealth failed to present sufficient evidence to support his terroristic threats charge against Carol, he failed sufficiently develop his argument in his appellate brief. Appellant argues that "the Commonwealth failed to present sufficient evidence that the defendant directly or indirectly made threats of violence or intended to terrorize." *See* Appellant's Brief at 11. He does not cite to pertinent legal authority or the certified record. *See id*. Due to the lack of pertinent discussion

in Appellant's brief, his challenge to the sufficiency of the evidence of his terroristic threats conviction, even if properly raised, would have been waived. *See* Pa.R.A.P. 2119(b)-(c) (requiring citation to legal authority and reference to the record in appellate briefs); *Commonwealth v. Hunzer*, 868 A.2d 498, 516 (Pa. Super. 2005) (holding an appellant waives a claim where he failed to cite any legal authority in support of an argument in his appellate brief).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2019